IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMANTHA WOODY, APRIL ALLEN, DELIA CRUZ, CANDICE TRENT, and NICOLE URVINA,

        Plaintiffs,

v.

FRED MEYER STORES, INC.,

        Defendant.

3:22-cv-01800-HZ

OPINION & ORDER

Richard B. Myers
Kate D. Flanagan
BENNETT HARTMANN, LLP
210 S.W. Morrison Street
Suite 500
Portland, OR 97204

        Attorneys for Plaintiff

Edward Choi
April Upchurch Fredrickson
Matthew A. Tripp
MILLER NASH LLP
1140 S.W. Washington Street
Suite 700
Portland, OR 97205

        Attorneys for Defendant

1 - OPINION & ORDER

HERNÁNDEZ, Senior Judge.

This matter comes before the Court on Plaintiffs' Unopposed Motion for Preliminary Settlement, ECF 49. For the reasons that follow, the Court denies Plaintiffs' Motion without prejudice and with leave to renew.

## BACKGROUND

On September 29, 2022, Defendant Fred Meyer Stores, Inc., activated a new payroll system for its hourly, non-exempt employees in Oregon. Plaintiffs allege that the new payroll system caused widespread pay errors for many Oregon employees and that Defendant knew or should have known that the new system would cause payroll errors.

On November 17, 2022, Samantha Woody and Nicole Urvina filed a class action Complaint in this Court on behalf of all hourly, non-exempt employees of Defendant who were employed "on or after activation of the new payroll system." Compl., ECF 1 at ¶ 7. They asserted claims for (1) failure to pay all wages on regular paydays in violation of Oregon Revised Statute § 652.120, (2) failure to pay all wages on termination in violation of Oregon Revised Statute §§ 652.140 and 652.150, and (3) withholding wages without authorization in violation of Oregon Revised Statute § 652.610.

On December 1, 2022, Samantha Woody, April Allen, Delia Cruz, Candice Trent, and Nicole Urvina ("named Plaintiffs") filed an amended class action Complaint on behalf of all hourly, non-exempt employees of Defendant who were "employed in the State of Oregon on or after September 29, 2022." Am. Compl., ECF 5, at ¶ 10. They assert claims for (1) failure to pay all wages on regular paydays in violation of Or. Rev. Stat. § 652.120, (2) failure to pay all wages on termination in violation of Or. Rev. Stat. §§ 652.140 and 652.150, (3) withholding wages

without authorization in violation of Or. Rev. Stat. § 652.610, and (4) equitable accounting of wages.

On November 17, 2023, Defendant filed a Motion for Judgment on the Pleadings in which it asserted it was entitled to judgment as a matter of law on Plaintiffs' third and fourth claims. On January 24, 2024, the Court issued an Opinion and Order in which it granted in part and denied in part Defendant's Motion. Specifically, the Court declined to conclude that Plaintiffs cannot state a claim for violation of § 652.610 as a matter of law; held Plaintiffs are not permitted to seek multiple recoveries of $200 for successive occurrences of the same improper deduction for the same individual under § 652.610, but may recover either actual damages or $200 for each different type of violation of § 652.610(3); granted the Motion as to Plaintiffs' fourth claim to the extent that it relies on the complexity of accounts; and denied the Motion as to Plaintiffs' fourth claim to the extent that it relies on a fiduciary relationship. The Court also granted Plaintiffs leave to submit a motion for leave to file a second amended complaint, which Plaintiffs did not do.

On April 19, 2024, Defendant filed a Motion for Partial Summary Judgment asserting Plaintiffs' second claim is precluded by a Collective Bargaining Agreement as to Woody, Plaintiffs' third claim is preempted by federal law as to Trent, Plaintiffs' claims for unlawful or unauthorized deductions of union dues are preempted by federal labor law, Plaintiffs' third claim should be limited to withholdings and deductions, and Plaintiffs' fourth claim is not viable because there is an adequate remedy at law.

On May 15, 2024, the parties had a settlement conference with United States Magistrate Judge John Acosta. The parties stated in two subsequent status reports that settlement discussions

3 - OPINION & ORDER

were ongoing. On June 25, 2024, the parties informed the Court that they had reached a settlement agreement.

On September 13, 2024, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement. The Court took the matter under advisement on that date.

## STANDARDS

In the Ninth Circuit there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)(internal quotation marks omitted), class actions "may be settled[, however,] . . . only with the court's approval." Fed. R. Civ. P. 23(e). Class action settlements "present unique due process concerns for absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). When parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Accordingly, preliminary approval of class action settlements involves a two-step inquiry. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672-CRB-(JSC), 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). In the first step courts decide whether a class exists. *Staton*, 327 F.3d at 952. In the second step courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. When the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." *Id.* Courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026. Courts

cannot "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a fairness hearing scheduled to determine whether the settlement is fair, adequate, and reasonable under Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012)(citing Fed. R. Civ. P. 23(e)(2), (3), (5)).

## DISCUSSION

The Court should grant preliminary approval before a class has been certified only when the parties establish all of the prerequisites of Federal Rule of Civil Procedure 23(a), at least one of the requirements of Rule 23(b), and the requirements of Rule 23(e)(2) have been met.

**I.     Class Certification**

Class actions must meet the following Rule 23(a) requirements for certification:

> "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 3:20-CV-03131-JSC, 2024 WL 3925714, at *5 (N.D. Cal. Aug. 23, 2024)(quoting Fed. R. Civ. P. 23(a)). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b). In this case the parties assert the putative class action meets Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly

cannot "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a fairness hearing scheduled to determine whether the settlement is fair, adequate, and reasonable under Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012)(citing Fed. R. Civ. P. 23(e)(2), (3), (5)).

## DISCUSSION

The Court should grant preliminary approval before a class has been certified only when the parties establish all of the prerequisites of Federal Rule of Civil Procedure 23(a), at least one of the requirements of Rule 23(b), and the requirements of Rule 23(e)(2) have been met.

**I.     Class Certification**

Class actions must meet the following Rule 23(a) requirements for certification:

> "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 3:20-CV-03131-JSC, 2024 WL 3925714, at *5 (N.D. Cal. Aug. 23, 2024)(quoting Fed. R. Civ. P. 23(a)). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b). In this case the parties assert the putative class action meets Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly

cannot "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a fairness hearing scheduled to determine whether the settlement is fair, adequate, and reasonable under Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012)(citing Fed. R. Civ. P. 23(e)(2), (3), (5)).

## DISCUSSION

The Court should grant preliminary approval before a class has been certified only when the parties establish all of the prerequisites of Federal Rule of Civil Procedure 23(a), at least one of the requirements of Rule 23(b), and the requirements of Rule 23(e)(2) have been met.

**I.     Class Certification**

Class actions must meet the following Rule 23(a) requirements for certification:

> "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 3:20-CV-03131-JSC, 2024 WL 3925714, at *5 (N.D. Cal. Aug. 23, 2024)(quoting Fed. R. Civ. P. 23(a)). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b). In this case the parties assert the putative class action meets Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

  **A.**  **Rule 23(a) Factors**

The parties agree that the payroll issues affected thousands of employees and there are approximately 26,000 individuals included in the scope of the proposed class. The Court finds the class is sufficiently numerous.

The commonality factor requires "'plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2024 WL 3925714, at *5 (quoting *A. B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022)). Common questions of law and fact capable of classwide resolution here include Defendant's alleged knowledge that pay errors were likely to occur after activation of the new payroll system, whether Defendant's payroll system caused reductions and withholdings in violation of Or. Rev. Stat. § 652.610, and the effect of Collective Bargaining Agreements, among other issues. The Court finds the commonality requirement is satisfied.

As to typicality, the test is "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2024 WL 3925714, at *5 (quoting *A. B.*, 30 F.4th at 839). "A named plaintiff is not typical if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024)(quotation omitted). The typicality requirement is satisfied here

because each of the named Plaintiffs is alleged to have suffered injury as a result of Defendant's payroll change that is the same as or similar to class members. For example, Woody did not receive paychecks for two pay periods after the payroll change, Cruz and Urvina had missing paychecks after the change in the system, Allen received her paycheck on time but was incorrectly paid a lower wage rate, and Trent had the majority of her wages withheld for taxes due to a system error. The named Plaintiffs are also alleged to have experienced erroneous union dues deductions as a result of the system change. Other class members are alleged to have been injured by the same course of conduct that caused named Plaintiffs' injuries and to have suffered similar injuries.

The adequacy-of-representation factor requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)(quotation omitted). There is no apparent conflict between the named Plaintiffs and class members and the named Plaintiffs and class counsel have vigorously pursued this action on behalf of the class. Accordingly, the Court finds that this requirement is met as to both the named Plaintiffs and class counsel.

In summary, the Court concludes that the Rule 23(a) factors are satisfied.

**B.    Rule 23(b)(3)**

Rule 23(b)(3) requires Plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Davies v. PeaceHealth*, No. 6:21-cv-00825-AA, 2023 WL 4559971, at *3 (D. Or. July 17, 2023)(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This inquiry requires "courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member," a "common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)(quotation omitted). At issue is "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Ludlow v. Flowers Foods, Inc*., No. 18CV1190-JO-JLB, 2022 WL 2441295, at *6 (S.D. Cal. July 5, 2022)(quotation omitted). See also *Harrison v. Harry & David Operations, Inc*., No. 1:18-CV-00410-CL, 2020 WL 8367533, at *8 (D. Or. Oct. 21, 2020), report and recommendation adopted, No. 1:18-CV-00410-CL, 2021 WL 1135022 (D. Or. Mar. 24, 2021) ("The analysis does not . . . require plaintiffs to show that there are no individual issues. Instead, the inquiry requires courts to determine 'whether the common, aggregation-enabling issues in the

case are more prevalent or important than the noncommon, aggregation-defeating, individual issues.'")(quoting *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 941 (9th Cir. 2019)). "The Ninth Circuit has emphasized that common employment policies and practices are frequently central to the predominance analysis, and where such policies are present, 'predominance is rarely defeated.'" *Harrison*, 2020 WL 8367533, at *8 (quoting *Senne*, 934 F.3d at 944). "Challenges to common policies should be adjudicated in a single action, particularly in the wage and hour context." *Id.,* at *9. The central issues here are Defendant's payroll system conversion, the resulting problems with class members' pay, and Defendant's knowledge of the possible effect of the conversion. These issues are more prevalent and important than individual issues. The Court, therefore, finds the predominance requirement is satisfied.

"'[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resol[ution].'" *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 596 (D. Or. 2013)(quoting *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010)(citation and internal quotations omitted)). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* (quotation omitted). When "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175 (citations omitted). Here it is in the class members' best interest to litigate their claims in a single action. There is little question that recovery on an individual basis would be dwarfed by the cost of putative plaintiffs litigating on an individual basis in this case. "For th[is] reason[], courts

often certify class actions when an employer's wage and hour practices similarly impact a large number of workers." *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). "Individual actions would entail increased expenses, duplication of discovery, and a potential for inconsistent results." *Id.* (citations omitted). "Class members would have less litigation or settlement leverage [and] significantly reduced resources . . . should they be required to individually litigate their claims." *Id.* (quotation omitted). The Court, therefore, concludes the superiority requirement is met.

## II.     Rule 23(e) Criteria

When, as here, the proposed settlement "would bind the class members, the court may approve it . . . only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2). In making this determination for settlements occurring before class certification "[t]he district court must act as a fiduciary, protecting the interests of absent class members by scrutinizing the settlement's fairness." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "[A] district court 'may consider some or all of the following factors' when assessing whether a proposed settlement meets this standard":

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019)(quotation omitted).

"Rule 23(e)(2) also requires the court to consider 'the terms of any proposed award of attorney's fees' and scrutinize the settlement for evidence of collusion or conflicts of interest

before approving the settlement as fair." *Kim*, 8 F.4th at 1179 (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1024-25 (9th Cir. 2021)). "Because . . . early, pre-certification settlements are so open to abuse and so little subject to scrutiny at the time by the district court, the court is required to search for 'subtle signs' that plaintiff's counsel has subordinated class relief to self-interest." *Id.* (citing *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 947 (9th Cir. 2011)).

### A. Initial Factors

The initial factors suggest the proposed settlement is fair and reasonable. For example, Plaintiffs set out a relatively strong case in their Amended Complaint and the Court denied part of Defendant's Motion for Judgment on the Pleadings. The Court, however, also granted part of Defendant's Motion and in its Motion for Partial Summary Judgment Defendant mounted solid arguments regarding whether some claims were preempted and whether certain claims were sustainable. The parties were, therefore, open to the serious risk of further expensive, complex, possibly lengthy litigation. In addition, the settlement was reached after discovery had been completed, the Motion for Judgment on the Pleadings litigated, and the matter mediated, all of which indicate the settlement was negotiated at arm's length and with thorough knowledge of the parties' positions, strengths, and weaknesses. The record also reflects Plaintiffs' counsel have extensive experience in putative class action cases and wage-and-hour litigation. As such they are well versed in the issues in this matter and settlement procedures.

In summary, the Court finds that the initial factors suggest the settlement is fair and reasonable.

### B. Subtle Sign Factors

As noted, "[b]ecause . . . early, pre-certification settlements are so open to abuse

and so little subject to scrutiny at the time by the district court, the court is required to search for 'subtle signs' that plaintiff's counsel has subordinated class relief to self-interest." *Kim*, 8 F.4th at 1179 (citing *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 947 (9th Cir. 2011)). "'[S]ubtle signs' of collusion for which [the Ninth Circuit] require[s] district courts to look include":

> (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing" arrangement (*i.e.,* an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

*Allen v. Bedolla,* 787 F.3d 1218, 1223 (9th Cir. 2015)(quoting *In re Bluetooth*, 654 F.3d at 947).

The settlement agreement does not contain a reverter, it does, however, contain a "clear sailing" arrangement. In addition, the Court has concerns about the service awards to named Plaintiffs.

    **1.**    **Service Award**

The settlement agreement contains a proposed service award of $9,500 for each class representative for a total of $47,500. The Court finds this amount is excessive and unsupported by the record.

"At its discretion, a district court may award an incentive payment to the named plaintiffs . . . to compensate them for work done on behalf of the class." *Trout v. Meggitt-USA Servs., Inc.*, No. 216CV07520ODWAJW, 2018 WL 1870388, at *6 (C.D. Cal. Apr. 17, 2018). *See also Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7785852, at *1 (N.D. Cal. Dec. 9, 2016)("The purpose of service awards is 'to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action.'")(quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

958 (9th Cir. 2009), and citing *Staton*, 327 F.3d at 977). "'[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases' and 'do not, by themselves, create an impermissible conflict between class members and their representative[ ].'" *Pemberton v. Nationstar Mortg., LLC*, No. 14CV01024BASMSB, 2020 WL 230014, at *2 (S.D. Cal. Jan. 15, 2020)(quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)). "Nonetheless, the Court has an obligation to ensure that the amount requested is fair." *Id.* (citing *In re Bluetooth*, 654 F.3d at 941). "'The propriety of incentive payments is arguably at its height when the award represents a fraction of the class representative's likely damages. . . . But we should be more dubious of incentive payments when they make the class representative whole, or . . . even more than whole.'" *Id.* (quoting *In re Dry Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013)). "Courts will scrutinize large incentive payments 'to ensure that the prospect of a large incentive did not encourage a named plaintiff to accept a suboptimal settlement at the expense of the class members whose interests they are appointed to guard.'" *Trout*, 2018 WL 1870388, at *6 (quoting *Staton*, 327 F.3d at 977).

Plaintiffs indicate that under the settlement agreement all members of the proposed class who do not opt out will receive equal payments "in an expected amount between $50 and $100." Pls.' Mot., ECF 49, at 6. In addition to the $50 and/or $100 payment, each proposed class member may submit a claim form for an additional payment under "one or both" circumstances: (1) "identifying at least one paycheck from September 25, 2022, through December 31, 2022, containing an inaccurate rate of pay or inaccurate worked hours" for which he or she will receive the "total sum of $200" and (2) "identifying at least one missing or late

paycheck from September 25, 2022, through December 31, 2022" for which he or she will receive the "total sum of $200." Myers Decl., Ex. 1 at ¶¶ 4.6.1.1 – 4.6.1.2. In theory, therefore, a prospective class member could obtain up to $500. The settlement agreement also provides, however, that the amount of each claim will be reduced on a pro rata basis depending on the number of claims submitted. *Id*. at ¶ 4.6.2. Accordingly, if significant numbers of class members submit claims, which seems likely given the size of the putative class, individual claimants may receive substantially less than the amounts set out above if the common fund is too small to fully pay all claims.

Courts have found that service or incentive awards to class representatives that greatly exceed the amount that unnamed class members stand to receive are inappropriate absent evident of significant, substantial contributions by class representatives that merit such a disparity. *See, e.g., Morales v. Halcore Grp., Inc.*, No. CV1705876TJHSKX, 2018 WL 6430544, at *4 (C.D. Cal. Oct. 30, 2018)(finding an incentive award of $7,500 was insufficiently supported when the class representative "declared that he spent 'many hours' assisting with this litigation, but offered no more than a generic description of his contributions"); *Est. of O'Shea v. Am. Solar Sol., Inc.*, No. 3:14-CV-00894-L-RBB, 2021 WL 5359434, at *2 (S.D. Cal. Oct. 25, 2021)("The proposed class representative award of $15,000 is excessive, particularly in light of the proposed recovery of $25 per valid claim."); *Corado-Cortez v. XPO Logistics, Inc.*, No. EDCV1900670TJHSHKX, 2020 WL 10818115, at *2 (C.D. Cal. Nov. 2, 2020)(Class representative's "vague description of her participation in this action does not warrant an incentive award of $10,000.00, especially where the proposed pro rata distribution of the net settlement amount will range between $254.00 and $1,092.00 per class member."); *Taafua v.*

*Quantum Glob. Techs., LLC*, No. 18-CV-06602-VKD, 2020 WL 95639, at *13 (N.D. Cal. Jan. 8, 2020)(denying a request for a service award of $5,000 noting it "is a considerable sum in view of the small recovery each individual class member likely will receive" and that the "moving papers provide minimal explanation, in conclusory fashion, for the requested award"). The service award proposed here would be between 19 and 190 times the amount class members might obtain. In support of the requested $9,500 service award it is asserted in Plaintiffs' Motion that each named Plaintiff "compiled documents responsive to a request for production and testified in a multi-hour deposition[,] . . . participated in the mediation[,] . . . and were active in negotiations after the mediation." Pls.' Mot. at 7. The Court finds that this vague description of the named Plaintiffs' participation does not warrant the service award of $9,500 per named Plaintiff particularly given the disparity between the amounts that unnamed class members stand to recover and the service award. In addition, there is no evidence that the named Plaintiffs' damages would be close to $9,500. Rather, these payments would likely make named Plaintiffs "more than whole." The Court concludes on this record that Plaintiffs have not established that the proposed service award is fair or reasonable.

        **2.    Attorney Fees**

The settlement agreement provides that Plaintiffs' counsel will receive $750,000 in attorney fees (25% of the $3,000,000 gross settlement award) plus $51,838.75 for litigation costs and expenses for a total of $801,838.75. Myers Decl., Ex. 1 at ¶ 4.4.

"District courts have 'an independent obligation to ensure that [any attorneys' fee] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount.'" *Toomey v. Ariz*, No. CV1900035TUCRMMAA, 2023 WL 6377273, at *3

(D. Ariz. Sept. 29, 2023)(quoting *Briseño,* 998 F.3d at 1022). "When attorneys' fees are paid out of a common fund, 'the class's lawyers occupy a position adversarial to the interests of their clients' and 'the district court has a special duty to protect the interests of the class.'" *Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-CV-05761-JD, 2014 WL 6065602, at *5 (N.D. Cal. Nov. 12, 2014)(quoting *Staton,* 327 F.3d at 959). "'The defendant . . . is interested only in the bottom line: how much the settlement will cost him. And class counsel, as 'economic man,' presumably is interested primarily in the size of the attorneys' fees provided for in the settlement, for those are the only money that class counsel, as distinct from the members of the class, get to keep.'" *Id.* (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014)). "[T]he Court must 'balance the proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)(quoting *Briseño* 998 F.3d at 1024).

        The settlement agreement states, "Defendant does not object to the requested attorney fees or costs." Myers Decl., Ex. 1 at ¶ 4.4. Such "clear sailing" provisions "'carr[y] the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.'" *Deats v. The Zalkin L. Firm, P.C.*, No. 23CV2005-L-SBC, 2024 WL 1521421, at *3 (S.D. Cal. Apr. 8, 2024)(quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d at 947).

> "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."

*Id.* (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d at 948).

As noted, Plaintiffs' counsel requests attorney fees that are 25 percent of the gross settlement award. The Ninth Circuit "has established a non-binding 'benchmark' guideline of twenty-five percent of the settlement amount." *Myles*, 2014 WL 6065602, at *5 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). "[A]ny such sum[, however,] should not be based on the full gross settlement amount, for much of that - like the fees paid to the settlement administrator - does not constitute a benefit to the class members." *Id.* (citing *Redman*, 768 F.3d at 629–630). It must also be supported by the record. Plaintiffs assert that their fee request is supported by the circumstances:

> Because the alleged wage violations arose from a software conversion, discovery in this case was especially challenging. It required unique expertise by Class Counsel. It also resulted in several novel or unusual questions of law, as demonstrated by Defendant's motions for judgment on the pleadings and for partial summary judgment. The length of the litigation—approximately two years—and the risk of nonpayment to Class Counsel further support an award of attorney fees not less than the 25 percent benchmark.

Pls. Mot. at 18. The Court questions whether this case involved several novel or unusual questions of law. Plaintiffs' claims in the First Amended Complaint are not particularly novel. In addition, Defendant moved for judgment on the pleadings as to the third claim and the Court limited Plaintiffs' statutory damages under § 652.615, but in so doing it adopted the reasoning of at least five cases decided in this district. The Court denied Defendant's motion as to whether Plaintiffs could state a claim for violation of § 652.610, which required statutory construction and a review of legislative history. The Court, however, also noted that portions of Defendant's argument relied on a mischaracterization of Plaintiffs' claim. At any rate, this case may have involved significant work by class counsel, but Plaintiffs do not provide any time records, billing rate information, or other evidence through which this Court can evaluate whether 25 percent of

17 - OPINION & ORDER

the gross settlement amount is reasonable. This is particularly important because the amount requested will significantly reduce the class fund, which, according to the settlement agreement, may result in class members receiving less than even the base amounts set out in the settlement agreement. The Court, therefore, finds it cannot conclude on this record that the attorney's fees requested are fair and reasonable.

In summary, the Court concludes Plaintiffs have not established that the proposed settlement is fundamentally fair, adequate, and reasonable under Rule 23(e). Accordingly the Court denies Plaintiffs' Motion for Preliminary Approval without prejudice and with leave to renew to cure the deficiencies set out in this Opinion and Order.

## CONCLUSION

The Court DENIES Plaintiffs' Unopposed Motion for Preliminary Settlement, ECF 49, without prejudice and with leave to renew to cure the deficiencies set out in this Opinion and Order.

IT IS SO ORDERED.

DATED this __17__ day of October, 2024.

_____
MARCO A. HERNÁNDEZ
United States Senior District Judge