**Richard B. Myers**, OSB No. 131264
richard@bennetthartman.com
Direct: (503) 546-9623
**Kate D. Flanagan**, OSB No. 213716
Direct: (503) 546-9606
kate@bennetthartman.com
BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
Of Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SAMANTHA WOODY, APRIL ALLEN, DELIA CRUZ, CANDICE TRENT, and NICOLE URVINA,<br><br>Plaintiffs,<br><br>v.<br><br>FRED MEYER STORES, INC.,<br><br>Defendant. | Case No. 3:22-cv-01800-HZ<br><br>**PLAINTIFFS' UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Pursuant to Fed. R. Civ. P. 23(e)<br><br>Request for Oral Argument |

**LR 7-1 CERTIFICATION**

Counsel for Plaintiffs Samantha Woody, April Allen, Delia Cruz, Candice Trent,

and Nicole Urvina (collectively "Plaintiffs") certify conferral with counsel for Defendant

Page 1 -   PLAINTIFFS' UNOPPOSED RENEWED MOTION FOR
           PRELIMINARY APPROVAL OF SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

Fred Meyer Stores, Inc. ("Defendant"). Before Plaintiffs filed this motion, Defendant's counsel confirmed in writing that Defendant does not oppose it.[1]

## INTRODUCTION

On September 13, 2024, Plaintiffs moved the Court for preliminary approval of a settlement (the "Motion"), which Plaintiffs and Defendant (collectively "the Parties") negotiated over several months with the assistance of a mediator. ECF No. 49.

On October 17, 2024, the Court issued an opinion and order ("Opinion and Order") denying Plaintiffs' motion without prejudice and with leave to renew to cure deficiencies. ECF No. 51. Specifically, the Court identified two deficiencies in the record that prevented approval of the Parties' settlement. First, the Court found that Plaintiffs did not establish that the proposed service awards to the class representatives are fair and reasonable. Second, the Court found that Plaintiffs did not establish that the requested attorney fees are fair and reasonable.

This renewed motion for preliminary approval attempts to address the deficiencies identified in the Opinion and Order. It incorporates by reference the record and argument contained in the Motion. It is further supported by a supplemental declaration of Plaintiffs' counsel and declarations of each of the five Plaintiffs.

---

[1] Although Defendant does not oppose this motion, Defendant reserves the right to contest any facts and arguments asserted in this motion if the Court does not approve the settlement. Defendant does not admit any facts or arguments asserted in this motion.

# ARGUMENT

Plaintiffs have taken the opportunity presented by the Court to supplement the record and better demonstrate that the Parties' settlement should be preliminarily approved. As explained below, the requested service award and requested attorney fees are fair and reasonable in light of the additional record before the Court. This renewed motion addresses each of the two deficiencies in the sequence discussed by the Court in the Opinion and Order—first the service award and then attorney fees.

## I. Service Award

The court has discretion to award incentive payments or service awards to class representatives. *Rausch v. Hartford Fin. Servs. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334, at *3 (D. Or. Feb. 26, 2007). However, the guidelines for evaluating the reasonableness and fairness of a service award are not well defined.

A key consideration is the service of the class representatives. Courts in the Ninth Circuit commonly look to five factors:[2] "(1) the risk to the class representative, both financial and otherwise, in commencing the case; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit or lack thereof enjoyed by the class representative as a result of the litigation."

---

[2] These five considerations are applied as factors but described as "criteria."

*Id.*, citing *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995). As explained further below, each of these factors weigh in favor of granting the requested service award.

The Court, however, must guard against an excessively large service award that risks creating a conflict of interest with the interests of the absent class members. Courts often pay close attention to the disparity between the amount of a service award and the amount of each payment to the class members. *See e.g.*, National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, published at 299 F.R.D. 160 (2014) (hereinafter "NACA Guidelines") (listing the final factor for consideration as "the size of each plaintiff's individual claim in comparison to the extra payment sought by the named representatives").

Finally, as noted in the Opinion and Order, the Court should be critical of a service award that makes a class representative whole or more than whole. After all, the payments to the class members, although a compromise, are the intended mechanism to compensate the class for their damages. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013).

Here, the requested service awards to the class representatives are supported by applicable caselaw. They reflect the Plaintiffs' significant contribution to the litigation. The service award is not so great that it creates too large of a disparity with payments to each individual class member, nor does it make the class representatives whole.

### A. The Plaintiffs' Showed Exceptional Service to the Class

The Court's evaluation of the proposed service award should focus on the service of the class representatives. Courts in the Ninth Circuit recognize that service awards are an important mechanism to compensate class representatives for their contribution to the class. *See Asner v. SAG-AFTRA Health Fund*, No. 2:20-cv-10914-CAS-JEMx, 2023 WL 6984582, *14 (C.D. Cal., Oct. 19, 2023) (approving service awards to "compensate the Plaintiffs for the burdens of their active involvement in this litigation and their commitment and effort on behalf of the Class"); *see also e.g., In re Toys R Us-Delaware Inc.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (noting that it is "especially important" to approve a service award when class representatives shoulder personal risk).

Plaintiffs accepted significant personal risk by agreeing to serve as class representatives. Although their individual feelings of risk varied, the Court can reasonably conclude that Plaintiffs, as low-wage workers, put themselves at risk by volunteering to serve as class representatives.[3] For example, Plaintiff Allen testified that she feared retaliation. Decl. of Allen at ¶ 5. Regardless of whether Plaintiff Allen was actually subjected to retaliation, a credible allegation of past retaliation or potential

---

[3] Each of the Plaintiffs were earning less than $20 per hour when the litigation was initiated. Among the five of them, their average hourly wage rate was $17.40. This is comparable to the proposed class, the vast majority of which earns well less than $20 per hour.

future retaliation is a relevant consideration for the Court. *See Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003).

All the Plaintiffs also risked reputational harm as a result of media attention to the lawsuit. *See* Decl. of Myers, ¶ 6 (discussing media coverage). Plaintiffs Urvina and Woody both testified to awareness of media coverage in their declarations. Decl. of Urvina at ¶ 4; Decl. of Woody at ¶ 3. Plaintiff Urvina's testimony is particularly compelling, as she testified of being scared to have customers and coworkers approach her about the litigation at work after they read about it in the news. Even if some Plaintiffs were not cited by name in news articles, the mere existence of media coverage is a relevant consideration because it poses the risk of unfavorable personal attention and notoriety.

The declarations of the Plaintiffs briefly describe various ways that the litigation affected each of them. However, all Plaintiffs contributed significant time and effort to the litigation over the past two years. Although any one activity cited by Plaintiffs may not require exceptional time and effort, the Court should recognize that their contributions to discovery responses, depositions, a mediation, and extended settlement negotiations collectively demonstrate a meaningful commitment to the litigation.

### B. The Disparity with Payments to the Class is Within Reasonable Limits

The Opinion and Order correctly considers the disparity between the service award and the individual payments to members of the proposed class. This is an

Page 6 -   PLAINTIFFS' UNOPPOSED RENEWED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

important consideration of the Court. *See* NACA Guidelines at 186. However, the Opinion and Order suggests that class members may receive "less than even the base amounts set out in the settlement agreement." ECF No. 51 at 18. To clarify, the Parties' settlement agreement establishes a $50 minimum payment to each class member, regardless of the number of claims submitted. *See* ECF No. 49 (describing the distribution to the proposed class).

It is mathematically impossible for the class to receive less than $50 per person. Although the size of a class may not always be well known, a defendant in a wage class action can identify the number of class members with a high degree of accuracy because they are required to keep records of their employees. Here, Defendant has reliable records of the number of individuals employed in Oregon and has estimated that the class will not exceed 26,000 individuals. If all individuals received $50, the total payout would equal only $1.3 million—less than half of the settlement sum. Significant remaining funds will be available for claims made or an increase of the base payment (or both). Even if a substantial portion of the class submits claim forms, the minimum payment will still not be less than $50 because the settlement agreement requires the claim form payouts to be reduced on a pro rata basis to ensure a minimum payout of $50 per class member. The range of individual payouts in this case is a minimum of $50 and a maximum of $500, which the Opinion and Order correctly identifies as a ratio between 1:190 and 1:19 of the requested service award. ECF No. 51 at 15.

Page 7 -   PLAINTIFFS' UNOPPOSED RENEWED MOTION FOR
              PRELIMINARY APPROVAL OF SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

There is no bright line rule as to what is too great of a disparity between a service award and the individual amounts to absent class members. *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024-26 (E.D. Cal. 2019) (discussing examples of amounts awarded to class representatives). Courts commonly approve service awards with a greater ratio of 1:190 to the payouts of class members. *See e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (approving $5,000 service awards when the individual class members would receive $12, a ratio of 417:1). Further, the Court should note that the sum amount of the requested service award is less than two percent of the total settlement sum ($47,500 is 1.58 percent of $3 million). *See Id.* (noting that the Ninth Circuit Court of Appeals approved a service award of six percent of the settlement sum in *Staton v. Boeing*).

Given the exceptional contributions of the class representatives, the Court should allow the disparity between the service awards and the payouts to individual class members. The ratio between the amounts is not fatal to the requested service award.

**C. The Service Award does not Make the Plaintiffs More than Whole**

As noted in the Opinion and Order, one of the concerns for the Court is that the proposed service award makes the Plaintiffs more than whole. In contrast to the Ninth Circuit caselaw focusing on the contributions of the class representatives during the litigation, the limited caselaw that has considered whether an award "makes whole" a class representative appears to look at damages in connection with their claims rather

than efforts during the litigation. *See In re Dry Max Pampers Litig.*, 724 F.3d at 722.

On this point, the Court should consider that ORS 652.615 allows recovery of actual damages, including non-monetary damages. No appellate court has issued controlling authority on this question. However, the recovery under ORS 652.355—which contains identical language as ORS 652.615 and was included in the same enacting legislation that set apart ORS 652.615 from ORS 652.610—has been found to allow recovery for non-pecuniary damages. *Brown v. Am. Prop. Mgmt. Corp.*, 167 Or. App. 53, 58-60, 1 P.3d 1051 (2000).

Assuming ORS 652.615 allows recovery of non-pecuniary damages, the potential recovery of each of the Plaintiffs would have been substantial had they pursued their claims on an individual basis and attempted to recover damages. *See* Decl. of Myers, ¶ 7 (discussing recovery in wage cases). They were each significantly affected by the pay errors in unique ways. Plaintiffs do not contend that their individual injury is the basis for their request for a service award. However, their individual damages are great enough that none of them is made more than whole by a service award of $9,500, especially in light of their substantial time and effort in service to the class.

## II. Attorney Fees

In evaluating the fairness and reasonableness of the requested attorney fee award, the Court should focus on the substantial funds recovered for the class. "The touchstone for determining the reasonableness of attorneys' fees in a class action is the

Page 9 -   PLAINTIFFS' UNOPPOSED RENEWED MOTION FOR
            PRELIMINARY APPROVAL OF SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

benefit to the class." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023). *See also* Fed. R. Civ P. 23 advisory committee's note to 2003 amendment ("For a percentage approach to fee measurement, results achieved is the basic starting point.") Here, the settlement proposed by the Parties meets what is described as the "gold standard" for class action settlements: direct cash payments to class members, no reversion of funds to the defendant, and no requirement of a claims form. *Burnham v. Ruan Logistics Corp.*, No. SACV120688AGANX, 2016 WL 11758787, at *2 (C.D. Cal. Feb. 4, 2016); *see also e.g., Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 110 (9th Cir. 2021) (describing the gold standard in a class action under the Federal Credit Reporting Act). The benefit to the class is the total dollar value of the settlement, and any reasonable fee award should reflect that benefit.

### A. An Award of 25 Percent of the Gross Recovery is Reasonable

In the Ninth Circuit, the 25 percent benchmark for attorney fees is calculated according to the gross settlement sum. A percentage fee allocation is considered by most commentators as the superior method for awarding fees. *See* American Law Institute, *Principles of the Law of Aggregate Litigation*, § 3.13 (October 2024 update). When courts in the Ninth Circuit award attorney fees as a percentage of recovery, they commonly do so using the gross settlement sum, including the cost of administration, notice, and litigation expenses. *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953; *see also Fritsch v. Swift Transportation Co.*, 899 F.3d 785, 796 (9th Cir. 2008) ("[I]n common

fund cases, we have estimated reasonable attorneys' fees to be 25 percent of the *total recovery*.") (emphasis added).

The Court need not ascertain the total value to the class because Plaintiffs do not contend any meaningful non-cash relief to the proposed class. That fact makes this case distinguishable from *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014), in which the essential benefit to the class was a $10 coupon. In settlements involving a non-cash benefit to the class, the court must analyze the value of any recovery. *See e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 602-05 (9th Cir. 2021). Here, however, the recovery to the class is the total settlement of $3 million.

Further, the projected administration costs of $86,030 are reasonable. *Compare to Redman*, 768 F.3d at 630 (approximately $2.2 million in administration fees dwarfed the face value of the coupon recovery proposed for class members). Reasonable administration costs to provide notice and distribute funds to class members can be considered a benefit to class members. *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953.

In sum, the benefit to the class is the first and most important consideration of the Court when deciding whether the requested attorney fee is fair and reasonable. Determining the benefit to the class in this case does not require any special analysis. Plaintiffs have successfully recovered $3 million for the class members, which will result in a cash payout to every member of the class. Although it will be distributed

amongst a large class if approved, Plaintiffs contend that the individual cash payments of $50 to $500 will be significant as compared to the hourly wage of most class members. An attorney fee award of 25 percent of the total recovery is fair and reasonable.

### B. The Requested Award Could be Supported by a Cross-Check

The Court has discretion to perform a lodestar cross-check. Normally this is recommended in unusual cases, such as settlements involving very large sums—in excess of $50 million—or cases in which there is uncertainty about the value of the settlement. *See* NACA Guidelines at 207; *see also* ALI, *Principles of the Law of Aggregate Litigation, supra.* However, the Court in its discretion may perform a cross-check as it finds useful.

Here, Plaintiffs' counsel has provided a ledger of recent hours incurred in this matter. Decl. of Myers, Ex. 3. It shows a substantial commitment of time by Plaintiffs' counsel over two years of litigation. However, Plaintiffs' counsel testifies that a lodestar cross-check at the time of final approval will likely show that a multiplier between 2.5 and 3.0 will be necessary for the incurred fees to support a 25 percent fee allocation. Decl. of Myers at ¶ 8.

The multiplier necessary to support the requested fee award is well within normal limits. For example, in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002), the court allowed a multiplier of 3.65. Similar multipliers have consistently been

found reasonable. *See Reyes*, 856 F. App'x at 111 (finding a 2.88 multiplier reasonable); *see also In re Portland Gen. Elec. Sec. Litig.*, No. 3:20-CV-1583-SI, 2022 WL 844077, at *9 (D. Or. Mar. 22, 2022) (finding a 2.7 multiplier reasonable).

Should the Court order a cross-check, Plaintiffs' counsel can provide a complete ledger of time incurred and the hourly rates for all timekeepers.

## CONCLUSION

For all the foregoing reasons, and relying on the additional record before the Court with this supplemental briefing, Plaintiffs respectfully request that the Court enter an order certifying the proposed class for settlement purposes only and preliminarily approving the Parties' settlement.

DATED: November 29, 2024.

BENNETT HARTMAN, LLP

s/Richard Myers
Richard B. Myers, OSB No. 131264
richard@bennetthartman.com
Direct: 503-546-9623
Kate D. Flanagan, OSB No. 213716
Direct: 503-546-9606
kate@bennetthartman.com
Of Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby declare that I served the foregoing PLAINTIFFS' UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT on:

Ed Choi
ed.choi@millernash.com
April Upchurch Fredrickson
april.fredrickson@millernash.com
Matthew Tripp
matthew.tripp@millernash.com
Miller Nash LLP
111 SW Fifth Avenue, Suite 3400
Portland, Oregon 97204

Steven Wilker
steven.wolker@tonkon.com
Sasha Petrova
sasha.petrova@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204

on November 29, 2024, by the following method:

   X    via CM/ECF

DATED: November 29, 2024.

                                            BENNETT HARTMAN, LLP

                                            s/Richard Myers
                                            Richard B. Myers, OSB No. 131264
                                            richard@bennetthartman.com
                                            Direct: 503-546-9623
                                            Kate D. Flanagan, OSB No. 213716
                                            Direct: 503-546-9606
                                            kate@bennetthartman.com
                                            Of Attorneys for Plaintiffs