IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMANTHA WOODY, APRIL ALLEN, DELIA CRUZ, CANDICE TRENT, and NICOLE URVINA,

        Plaintiffs,

v.

FRED MEYER STORES, INC.,

        Defendant.

3:22-cv-01800-HZ

OPINION & ORDER

Richard B. Myers
Kate D. Flanagan
BENNETT HARTMANN, LLP
210 S.W. Morrison Street
Suite 500
Portland, OR 97204

        Attorneys for Plaintiff

Edward Choi
April Upchurch Fredrickson
Matthew A. Tripp
MILLER NASH LLP
1140 S.W. Washington Street
Suite 700
Portland, OR 97205

        Attorneys for Defendant

1 - OPINION & ORDER

HERNÁNDEZ, Senior Judge.

This matter comes before the Court on Plaintiffs' Unopposed Renewed Motion for Preliminary Settlement, ECF 54. For the reasons that follow, the Court grants Plaintiffs' Motion.

## BACKGROUND

On September 29, 2022, Defendant Fred Meyer Stores, Inc., activated a new payroll system for its hourly, non-exempt employees in Oregon. Plaintiffs allege that the new payroll system caused widespread pay errors for many Oregon employees and that Defendant knew or should have known that the new system would cause payroll errors.

On November 17, 2022, Samantha Woody and Nicole Urvina filed a class action Complaint in this Court on behalf of all hourly, non-exempt employees of Defendant who were employed "on or after activation of the new payroll system." Compl., ECF 1 at ¶ 7. They asserted claims for (1) failure to pay all wages on regular paydays in violation of Oregon Revised Statute § 652.120, (2) failure to pay all wages on termination in violation of Oregon Revised Statute §§ 652.140 and 652.150, and (3) withholding wages without authorization in violation of Oregon Revised Statute § 652.610.

On December 1, 2022, Samantha Woody, April Allen, Delia Cruz, Candice Trent, and Nicole Urvina ("named Plaintiffs") filed an amended class action Complaint on behalf of all hourly, non-exempt employees of Defendant who were "employed in the State of Oregon on or after September 29, 2022." Am. Compl., ECF 5, at ¶ 10. They assert claims for (1) failure to pay all wages on regular paydays in violation of Or. Rev. Stat. § 652.120, (2) failure to pay all wages on termination in violation of Or. Rev. Stat. §§ 652.140 and 652.150, (3) withholding wages without authorization in violation of Or. Rev. Stat. § 652.610, and (4) equitable accounting of

wages.

On November 17, 2023, Defendant filed a Motion for Judgment on the Pleadings in which it asserted it was entitled to judgment as a matter of law on Plaintiffs' third and fourth claims. On January 24, 2024, the Court issued an Opinion and Order in which it granted in part and denied in part Defendant's Motion. Specifically, the Court declined to conclude that Plaintiffs cannot state a claim for violation of § 652.610 as a matter of law; held Plaintiffs are not permitted to seek multiple recoveries of $200 for successive occurrences of the same improper deduction for the same individual under § 652.610, but may recover either actual damages or $200 for each different type of violation of § 652.610(3); granted the Motion as to Plaintiffs' fourth claim to the extent that it relies on the complexity of accounts; and denied the Motion as to Plaintiffs' fourth claim to the extent that it relies on a fiduciary relationship.

On April 19, 2024, Defendant filed a Motion for Partial Summary Judgment asserting Plaintiffs' second claim is precluded by a Collective Bargaining Agreement as to Woody, Plaintiffs' third claim is preempted by federal law as to Trent, Plaintiffs' claims for unlawful or unauthorized deductions of union dues are preempted by federal labor law, Plaintiffs' third claim should be limited to withholdings and deductions, and Plaintiffs' fourth claim is not viable because there is an adequate remedy at law.

On May 15, 2024, the parties had a settlement conference with United States Magistrate Judge John Acosta. On June 25, 2024, the parties informed the Court that they had reached settlement.

On September 13, 2024, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement. On October 17, 2024, the Court issued an Opinion and Order denying Plaintiffs'

Motion with leave to renew.

On November 29, 2024, Plaintiffs filed a Renewed Motion for Preliminary Approval of Settlement. The Court took the matter under advisement on December 13, 2024.

## STANDARDS

In the Ninth Circuit there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)(internal quotation marks omitted), class actions "may be settled[, however,] . . . only with the court's approval." Fed. R. Civ. P. 23(e). Class action settlements "present unique due process concerns for absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). When parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Accordingly, preliminary approval of class action settlements involves a two-step inquiry. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672-CRB-(JSC), 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). In the first step courts decide whether a class exists. *Staton*, 327 F.3d at 952. In the second step courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. When the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." *Id.* Courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain provisions. The settlement must stand or fall in its

entirety." *Id.* (internal quotation marks and citation omitted).

If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a fairness hearing scheduled to determine whether the settlement is fair, adequate, and reasonable under Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012)(citing Fed. R. Civ. P. 23(e)(2), (3), (5)).

## DISCUSSION

The Court should grant preliminary approval before a class has been certified only when the parties establish all of the prerequisites of Federal Rule of Civil Procedure 23(a), at least one of the requirements of Rule 23(b), and the requirements of Rule 23(e)(2) have been met.

The Court found in its October 17, 2024, Opinion and Order that the parties had established that the prerequisites of Rule 23(a), the requirements of Rule 23(b)(3) and most of the requirements of Rule 23(e)(2) had been satisfied. The Court found, however, that Plaintiffs had not established that the proposed service award or attorney fees were fair or reasonable. Plaintiffs address these factors in their Renewed Motion.

When, determining whether a settlement occurring before class certification is fair, reasonable, and adequate, "[t]he district court must act as a fiduciary, protecting the interests of absent class members." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "[A] district court 'may consider some or all of the following factors' when assessing whether a proposed settlement meets this standard":

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the

experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1048 (9th Cir. 2019)(quotation omitted).

"Rule 23(e)(2) also requires the court to consider 'the terms of any proposed award of attorney's fees' and scrutinize the settlement for evidence of collusion or conflicts of interest before approving the settlement as fair." Kim, 8 F.4th at 1179 (quoting Briseño v. Henderson, 998 F.3d 1014, 1024-25 (9th Cir. 2021)). "Because . . . early, pre-certification settlements are so open to abuse and so little subject to scrutiny at the time by the district court, the court is required to search for 'subtle signs' that plaintiff's counsel has subordinated class relief to self-interest." Id. (citing In re Bluetooth Headset Prods. Liab., 654 F.3d 935, 947 (9th Cir. 2011)). "'[S]ubtle signs' of collusion for which [the Ninth Circuit] require[s] district courts to look include":

> (1) when counsel receive a disproportionate distribution of the settlement;
> (2) when the parties negotiate a "clear sailing" arrangement (*i.e.,* an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

Allen, 787 F.3d at 1223 (quoting In re Bluetooth, 654 F.3d at 947).

**I.    Class Certification and Class Counsel**

For the reasons set out in the Court's October 17, 2024, Opinion and Order, the Court concludes Plaintiffs have established the requirements for certification of the class set out in the Settlement Agreement for settlement purposes. The Court also approves Bennett Hartman LLP as class counsel.

**II.    Service Awards**

The settlement agreement contains a proposed service award of $9,500 for each class

representative for a total of $47,500.

The Ninth Circuit has permitted "reasonable incentive awards," and has "described such awards as being intended 'to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Roes, 1-2*, 944 F.3d at 1057 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) and citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)). The Ninth Circuit has, "therefore directed district courts to evaluate the propriety of requested incentive payments 'using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Id.* (quoting *Staton*, 327 F.3d at 977 (alterations in *Staton*)). "'[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases' and 'do not, by themselves, create an impermissible conflict between class members and their representative[ ].'" *Pemberton v. Nationstar Mortg., LLC*, No. 14CV01024BASMSB, 2020 WL 230014, at *2 (S.D. Cal. Jan. 15, 2020)(quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943). "Nonetheless, the Court has an obligation to ensure that the amount requested is fair." *Id.* (citing *In re Bluetooth*, 654 F.3d at 941). "'The propriety of incentive payments is arguably at its height when the award represents a fraction of the class representative's likely damages. . . . But we should be more dubious of incentive payments when they make the class representative whole, or . . . even more than whole.'" *Id.* (quoting *In re Dry Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013)). "Courts

will scrutinize large incentive payments 'to ensure that the prospect of a large incentive did not encourage a named plaintiff to accept a suboptimal settlement at the expense of the class members whose interests they are appointed to guard.'" *Trout*, 2018 WL 1870388, at *6 (quoting *Staton*, 327 F.3d at 977).

Plaintiffs indicate that under the settlement agreement all members of the proposed class who do not opt out will receive equal payments "in an expected amount between $50 and $100." Pls.' Mot., ECF 49, at 6. In addition to the $50 and/or $100 payment, each proposed class member may submit a claim form for an additional payment under "one or both" circumstances: (1) "identifying at least one paycheck from September 25, 2022, through December 31, 2022, containing an inaccurate rate of pay or inaccurate worked hours" for which he or she will receive the "total sum of $200" and (2) "identifying at least one missing or late paycheck from September 25, 2022, through December 31, 2022" for which he or she will receive the "total sum of $200." Myers Decl., ECF 49, Ex. 1 at ¶¶ 4.6.1.1 – 4.6.1.2. In theory, therefore, a prospective class member could obtain up to $500. The settlement agreement also provides, however, that the amount of each claim will be reduced on a pro rata basis depending on the number of claims submitted. *Id*. at ¶ 4.6.2.

Courts have found that service or incentive awards to class representatives that greatly exceed the amount that unnamed class members stand to receive are inappropriate absent evidence of significant, substantial contributions by class representatives that merit such a disparity. *See, e.g., Morales v. Halcore Grp., Inc.*, No. CV1705876TJHSKX, 2018 WL 6430544, at *4 (C.D. Cal. Oct. 30, 2018)(finding an incentive award of $7,500 was insufficiently supported when the class representative "declared that he spent 'many hours' assisting with this

litigation, but offered no more than a generic description of his contributions"); *Est. of O'Shea v. Am. Solar Sol., Inc.*, No. 3:14-CV-00894-L-RBB, 2021 WL 5359434, at *2 (S.D. Cal. Oct. 25, 2021)("The proposed class representative award of $15,000 is excessive, particularly in light of the proposed recovery of $25 per valid claim."); *Corado-Cortez v. XPO Logistics, Inc.*, No. EDCV1900670TJHSHKX, 2020 WL 10818115, at *2 (C.D. Cal. Nov. 2, 2020)(Class representative's "vague description of her participation in this action does not warrant an incentive award of $10,000.00, especially where the proposed pro rata distribution of the net settlement amount will range between $254.00 and $1,092.00 per class member."); *Taafua v. Quantum Glob. Techs., LLC*, No. 18-CV-06602-VKD, 2020 WL 95639, at *13 (N.D. Cal. Jan. 8, 2020)(denying a request for a service award of $5,000 noting it "is a considerable sum in view of the small recovery each individual class member likely will receive" and that the "moving papers provide minimal explanation, in conclusory fashion, for the requested award"). The service award proposed here would be between 19 and 190 times the amount class members might obtain.

In support of the requested $9,500 service award Plaintiffs asserted in their initial motion for preliminary approval that each named Plaintiff "compiled documents responsive to a request for production and testified in a multi-hour deposition[,] . . . participated in the mediation[,] . . . and were active in negotiations after the mediation." Pls.' Mot. at 7. The Court found that this vague description of the named Plaintiffs' participation did not establish that a service award of $9,500 per named Plaintiff was fair or reasonable particularly given the disparity between the amounts that unnamed class members stand to recover and the service award.

In the Renewed Motion for Preliminary Approval Plaintiffs continue to seek a service

award of $9,500 per named Plaintiff. In support of that request Plaintiffs submit declarations of each named Plaintiff setting out their efforts in support of this action and settlement. None of the Declarations, however, provide information about the approximate amount of time the named Plaintiffs spent on this matter. For example, April Allen testifies:

> I have been very involved in the class action lawsuit since it was filed two years ago. I have frequently called and emailed my attorney. I worked with my attorney's office to compile documents to provide to Fred Meyer's attorneys. I had my deposition taken and met with my attorney beforehand. I also participated in the mediation and participated in the settlement negotiations after the mediation.

Allen Decl., ECF 56, ¶ 4. The time records provided by Plaintiffs indicate that Allen's conference with counsel and deposition took 2.5 hours. Meyers Supp'l. Decl., ECF 55, Ex. 3, p. 13.

Nicole Urvina testifies: "I worked with my attorney to provide documents as part of the lawsuit. . . . I have been very involved in settlement negotiations. I participated in the mediation and routinely called, emailed, and texted my attorney about negotiations." Urvina Decl., ECF 59, ¶¶ 5-6. Counsel's time records indicate that counsel's conference with Urvina and her deposition took 3.4 hours. Meyers Supp'l. Decl., Ex. 3, p. 13.

Samantha Woody testifies: "I have had regular contact with my attorney since the lawsuit was filed. I took time to provide documents, including personal documents such as bank statements. I had a deposition. I also participated in the mediation and the settlement negotiations after the mediation." Woody Decl., ECF 60, ¶ 4. Counsel's time records indicate that counsel's conference with Woody and her deposition took 3.1 hours. Meyers Supp'l. Decl., Ex. 3, p. 12.

Delia Cruz testifies: "I have been working with my attorneys on this lawsuit for over two years. On several occasions I provided information to my attorney about my missing paychecks."

10 - OPINION & ORDER

Cruz also "compiled documents to give to [her] attorneys" and had a deposition "conducted in person at [her] attorney's office. Cruz Decl., ECF 57, ¶ 5. Cruz states: "I have been very involved in settlement discussions. I attended the mediation in person at my attorney's office. After the mediation, I participated in all decisions about settlement." *Id*. ¶ 6. Counsel's time records indicate that counsel's conference with Cruz and her deposition took 4.2 hours. Meyers Supp'l. Decl., Ex. 3, p. 12.

      Candice Trent testifies:

> I have stayed updated about the lawsuit as best I could. After the lawsuit was filed, I was diagnosed with cancer. My treatment . . . delayed my deposition until I was done with chemotherapy. I have been involved in the lawsuit in other ways. For example, I compiled and produced documents in response to requests from Fred Meyer's attorneys, including personal documents such as tax filings. I have been very involved in settlement negotiations. I attended the mediation in person at my attorney's office. I continued to be involved in negotiations in the weeks after the mediation.

Trent Decl., ECF 58, ¶¶ 4-6. Counsel's time records do not contain any entry for a deposition of Trent.

      Counsel's time records indicate the mediation took 5.8 hours and counsel and other staff spent roughly six hours contacting named Plaintiffs about the mediation and settlement agreement.

      The Court recognizes that named Plaintiffs likely spent more hours compiling requested information and documents, but Plaintiffs have provided the Court with no indication of the time these tasks took and, therefore, it is difficult for the Court to conclude that the time that named Plaintiffs spent on this matter warrants an incentive award of $9,500 per named Plaintiff, particularly in light of the disparity between the requested incentive award and the possible

awards to unnamed Plaintiffs. *See, e.g.,* *Corado-Cortez v. XPO Logistics, Inc.*, No. EDCV1900670TJHSHKX, 2020 WL 10818115, at *2 (C.D. Cal. Nov. 2, 2020)(court found the requested $10,000 incentive award was not supported although the plaintiff stated "she performed approximately 60 hours of work as the named plaintiff" because the plaintiff "declared, in a conclusory fashion, that she consulted with attorneys, prepared discovery, responded to written questions, provided documents, and assisted her attorneys in preparing for depositions and mediation" and "the proposed pro rata distribution of the net settlement amount will range between $254.00 and $1,092.00 per class member").

Some named Plaintiffs identified additional burdens associated with representing the putative class. For example, Allen testified she "feared that [she] would be subjected to retaliation" for participating in this matter. Allen Decl. ¶ 5. Allen states: "My work hours were reduced shortly after the lawsuit was filed and I suspected my involvement with the lawsuit was a reason. For many months I felt like I was being treated differently at work because of the lawsuit." *Id.* Similarly, Urvina states: "When the lawsuit was first filed, my name was listed in news articles. Coworkers and customers approached me at work after reading about the lawsuit in the news. It was very scary to me." Urvina Decl. ¶ 4. Urvina also notes she was "overcome with anxiety" before her deposition and she "missed work due to [her] participation in the lawsuit." *Id*. ¶¶ 5-6. Woody testifies: "After the lawsuit was filed, I was contacted by a reporter. I knew there had been news coverage about the lawsuit and that my name had been cited because it was listed first in the lawsuit." Woody Decl. ¶ 3.

The Court concludes Plaintiffs have established that incentive awards are appropriate. The Court, however, declines to decide the final amount of such an award at the preliminary

stage. At the final approval stage the Court will closely evaluate any additional evidence in support of individual incentive awards of $9,500 per named Plaintiff.

**III.    Attorney Fees**

The settlement agreement provides that Plaintiffs' counsel will receive $750,000 in attorney fees (25% of the $3,000,000 gross settlement award) plus $51,838.75 for litigation costs and expenses for a total of $801,838.75. Myers Decl., ECF 55, Ex. 1 at ¶ 4.4.

"District courts have 'an independent obligation to ensure that [any attorney fee] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount.'" *Toomey v. Ariz*, No. CV1900035TUCRMMAA, 2023 WL 6377273, at *3 (D. Ariz. Sept. 29, 2023)(quoting *Briseño,* 998 F.3d at 1022). "When attorneys' fees are paid out of a common fund, 'the class's lawyers occupy a position adversarial to the interests of their clients' and 'the district court has a special duty to protect the interests of the class.'" *Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-CV-05761-JD, 2014 WL 6065602, at *5 (N.D. Cal. Nov. 12, 2014)(quoting *Staton*, 327 F.3d at 959). "'The defendant . . . is interested only in the bottom line: how much the settlement will cost him. And class counsel, as 'economic man,' presumably is interested primarily in the size of the attorneys' fees provided for in the settlement, for those are the only money that class counsel, as distinct from the members of the class, get to keep.'" *Id.* (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014)). "[T]he Court must 'balance the proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)(quoting *Briseño* 998 F.3d at 1024).

The settlement agreement states, "Defendant does not object to the requested attorney

fees or costs." Myers Decl., Ex. 1 at ¶ 4.4. Such "clear sailing" provisions "'carr[y] the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.'" *Deats v. The Zalkin L. Firm, P.C.*, No. 23CV2005-L-SBC, 2024 WL 1521421, at *3 (S.D. Cal. Apr. 8, 2024)(quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d at 947).

> "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."

*Id.* (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d at 948).

As noted, Plaintiffs' counsel requests attorney fees that are 25 percent of the gross settlement award. The Ninth Circuit "has established a non-binding 'benchmark' guideline of twenty-five percent of the settlement amount." *Myles*, 2014 WL 6065602, at *5 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). "[A]ny such sum[, however,] should not be based on the full gross settlement amount, for much of that - like the fees paid to the settlement administrator - does not constitute a benefit to the class members." *Id.* (citing *Redman*, 768 F.3d at 629–630). It must also be supported by the record.

In their initial motion for preliminary approval Plaintiffs asserted that their fee request was supported:

> Because the alleged wage violations arose from a software conversion, discovery in this case was especially challenging. It required unique expertise by Class Counsel. It also resulted in several novel or unusual questions of law, as demonstrated by Defendant's motions for judgment on the pleadings and for partial summary judgment. The length of the litigation—approximately two years—and the risk of nonpayment to Class Counsel further support an award of attorney fees not less than the 25 percent benchmark.

Pls. Mot., ECF 49, at 18. In its October 17, 2024 Opinion and Order the Court questioned whether this case involved several novel or unusual questions of law. Plaintiffs' claims in the First Amended Complaint are not particularly novel. In addition, Defendant moved for judgment on the pleadings as to the third claim and the Court limited Plaintiffs' statutory damages under § 652.615, but in so doing it adopted the reasoning of at least five cases decided in this district. The Court denied Defendant's motion as to whether Plaintiffs could state a claim for violation of § 652.610, which required statutory construction and a review of legislative history. The Court, however, noted that portions of Defendant's argument relied on a mischaracterization of Plaintiffs' claim. The Court also points out that although this case may have involved significant work by class counsel, Plaintiffs did not provide any time records, billing rate information, or other evidence through which this Court could evaluate whether 25 percent of the gross settlement amount is reasonable. The Court explained that this information was particularly important because the amount requested will significantly reduce the class fund. The Court, therefore, could not conclude that the attorney's fees requested were fair and reasonable.

In support of their Renewed Motion for Preliminary Approval, Plaintiffs produce records of the time and staff who worked on this matter, but they do not provide billing rates. The records produced reflect that Plaintiffs' counsel and staff expended 585.7 hours on this matter through October 29, 2024. Meyers Supp'l Decl., Ex. 3 at 24. Those hours over the requested $750,000, yield an hourly rate of $1,280.52, which greatly exceeds average or even rates in the 95th percentile for counsel of any experience level in the Portland area. The amount of fees requested by Plaintiffs' counsel need not be finally determined at the preliminary approval stage. *Taafua v. Quantum Glob. Techs., LLC*, No. 18-CV-06602-VKD, 2020 WL 95639, at *12 (N.D.

15 - OPINION & ORDER

Cal. Jan. 8, 2020). The Court preliminarily approves counsel's right to attorney fees recognizing that the hourly rate is not the sole determiner of fairness. At the final approval stage, however, the Court will closely examine counsel's requested rates and hours to cross-check the amount of fees requested. The Court will also consider whether the guideline of 25 percent should be based on the gross settlement amount or the amount net of items that are not a benefit to the class members such as the fees paid to the settlement administrator.

## IV.  Settlement Administrator and Notice

### A.  Settlement Administrator

As requested, the Court appoints Rust Consulting, Inc., as the Settlement Administrator, who shall be supervised by class counsel, Bennett Hartman, LLP, and the Court. Class counsel shall file with the Court an appropriate declaration reporting Rust Consulting's compliance with the provisions of the Settlement Agreement no later than 21 days before the final approval hearing.

### B.  Notice

"In cases like this one, in which a class is certified under Rule 23(b)(3) for purposes of settlement, the Federal Rules require that the district court 'direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Roes, 1-2*, 944 F.3d at 1045 (quoting Fed. R. Civ. P. 23(c)(2)(B)). "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). "That is, the means employed [to provide notice] must be such as [a person]

16 - OPINION & ORDER

desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* (quotation omitted).

The Court concludes that the form, content, and method of giving notice to the Settlement Class as described in the Section 3.3 of the Settlement Agreement: (a) constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated under the circumstances to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and class members' rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23 and due process. The Court finds that the Class Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by settlement class members. Non-material modifications to the Class Notice may be made without further order of the Court. The Court, however, directs Plaintiffs to amend the section of the notice titled Summary of the Settlement to state that the five class representatives "may receive a one-time payment up to $9,500 for their service in this matter" and to state that class counsel "may receive attorney fees up to the amount of twenty-five percent of the gross Settlement Fund."

## CONCLUSION

The Court GRANTS Plaintiffs' Unopposed Renewed Motion for Preliminary Settlement, ECF 54, and directs Plaintiffs to submit a form of Order conforming with this Opinion and Order. The Court will set a final fairness hearing and briefing schedule after the Court enters the

Order approving the preliminary settlement.

    IT IS SO ORDERED.

    DATED this __3__ day of February, 2025.

                                                    */s/ Marco Hernández*
                                              MARCO A. HERNÁNDEZ
                                            United States Senior District Judge