**Richard B. Myers**, OSB No. 131264
richard@bennetthartman.com
Direct: (503) 546-9623
**Kate D. Flanagan**, OSB No. 213716
Direct: (503) 546-9606
kate@bennetthartman.com
BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
Of Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SAMANTHA WOODY, APRIL ALLEN, DELIA CRUZ, CANDICE TRENT, and NICOLE URVINA,<br><br>Plaintiffs,<br><br>v.<br><br>FRED MEYER STORES, INC.,<br><br>Defendant. | Case No. 3:22-cv-01800-HZ<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## LR 7-1 CERTIFICATION

Counsel for Plaintiffs Samantha Woody, April Allen, Delia Cruz, Candice Trent, and Nicole Urvina (collectively "Plaintiffs") conferred with counsel for Defendant Fred

Meyer Stores, Inc. ("Defendant") before bringing this motion. Plaintiffs' counsel certifies that Defendant does not oppose this motion.

## MOTION

Pursuant to Fed. R. Civ. P. 23, Plaintiffs move the Court for final approval of the settlement between Plaintiffs and Defendant (collectively "the Parties"). This motion is supported by the memorandum of law below and the declarations of Plaintiffs' counsel, the settlement administrator's project manager, and each of the five Plaintiffs.

Consistent with the terms of the Parties' settlement agreement ("Settlement Agreement") (ECF No. 49-2) preliminarily approved by the Court on February 25, 2025, Plaintiffs seek an order that:

1. Grants final approval of the Parties' settlement as fair, reasonable, and adequate upon the terms set forth in the Settlement Agreement;

2. Certifies the proposed class (the "Class") as defined in the Settlement Agreement for settlement purposes only, excluding all 38 individuals who timely and validly opted out;

3. Determines that the notice provided to the Class by Rust Consulting, Inc. (the "Settlement Administrator") was adequate;

4. Approves the Settlement Agreement as binding on the Class and permanently enjoins members of the Class from pursuing and/or seeking to reopen claims that have been released by the Settlement Agreement;

Page 2 -  PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

5. Directs Defendant to pay the settlement sum of $3,000,000 ("Settlement Sum") into a common fund held in trust by the Settlement Administrator;

6. Awards service awards from the Settlement Sum to the Plaintiffs as class representatives in the amount of $9,500 each as set forth in the Settlement Agreement;

7. Awards attorney fees and costs from the Settlement Sum to the law firm of Bennett Hartman, LLP, as class counsel in the amount of $801,838.75 as set forth in the Settlement Agreement;

8. Awards costs and expenses from the Settlement Sum to the Settlement Administrator in the amount of $86,030;

9. Directs the Settlement Administrator to distribute the Settlement Sum according to the Court's award and the Settlement Agreement, including $113,600 for claims submitted by members of the Class, the remaining portion distributed equally to all members of the Class,[1] and unclaimed funds distributed to the cy pres recipient; and

10. Enters a general judgment of dismissal and dismisses this action with prejudice and without further fees or costs to any party.

---

[1] If the Court approves the distribution amounts requested by Plaintiffs, each class member would receive $87.36, which reflects the remainder of the Settlement Sum of $1,951,031.25 divided by 22,332 (the number of individuals in the Class after 38 exclusions and three self-identified inclusions).

Page 3 -  PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## FACTUAL AND PROCEDURAL HISTORY [2]

Plaintiffs incorporate by reference the factual summary contained in their unopposed motion for preliminary approval of the settlement. ECF No. 49. As explained in that factual summary, this wage action arises from Plaintiffs' allegations that Defendant's new payroll system caused widespread pay errors. On August 27, 2024—approximately two years after Defendant implemented its new payroll system— the Parties executed the Settlement Agreement to resolve the disputed claims.

On October 17, 2024, after Plaintiffs moved the Court for preliminary approval of the settlement, the Court issued an opinion and order denying Plaintiffs' motion without prejudice and with leave to renew to cure deficiencies. ECF No. 51. The Court identified two deficiencies that prevented preliminary approval of the Parties' settlement. First, the Court found that Plaintiffs did not establish that the amount of the service awards agreed to in the Settlement Agreement were fair and reasonable. Second, the Court found that Plaintiffs did not establish that the amount of the attorney fees agreed to in the Settlement Agreement were fair and reasonable.

On November 29, 2024, Plaintiffs filed a renewed motion for preliminary approval of the settlement, specifically addressing the two deficiencies identified by the

---

[2] As before, Defendant reserves the right to contest any facts asserted in this motion if the Court does not approve the settlement. Defendant does not admit any facts asserted in this motion.

Page 4 -   PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

Court. ECF No. 54. On February 3, 2025, the Court issued an opinion and order granting Plaintiffs' motion for preliminary approval of the settlement. ECF No. 63. However, the Court declined to decide whether the proposed service awards to the Plaintiffs were fair and reasonable, inviting Plaintiffs to submit additional evidence at the final approval stage. The Court further declined to decide the amount of attorney fees at the preliminary approval stage, requesting a cross-check of requested rates and hours.

On February 25, 2025, the Court entered an order (the "Order") directing notice to be mailed to the Class with amendments that the service awards and attorney fees may be awarded "up to" the amounts set forth in the Settlement Agreement. ECF No. 65. The Order states that the Court will evaluate the amount of the requested service award and the amount of the requested attorney fees at time of final approval. The Order further states that the Court will consider, with assistance of a cross-check, whether the guideline of a 25 percent fee award should be based on the gross settlement amount or the amount of benefit to the Class.

After the Court's grant of preliminary approval of the settlement, the Parties' counsel worked with the Settlement Administrator to ensure timely distribution of the settlement notice to 22,367 potential class members. *See* Decl. of Pikus at ¶¶ 7-10. The Settlement Administrator received 601 claim forms from members of the Class and 38 timely requests for exclusion. *Id.* at ¶¶ 14-15. The Settlement Administrator did not receive any objections to the settlement. *Id.* at ¶ 16.

Page 5 -   PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

## ARGUMENT

This memorandum addresses three issues pertinent to the Court's evaluation of the settlement at this final approval stage. First, Plaintiffs briefly discuss the response of the Class to the settlement. Second, Plaintiffs revisit the appropriateness of the service awards to the class representatives. Third, Plaintiffs articulate why the requested attorney fee is reasonable.

**1.  The Response of the Class Weighs in Favor of Final Approval.**

The Class responded extremely positively upon receiving notice of the settlement. Only 38 recipients of the notice timely opted out of the settlement—an extraordinary exclusion rate of 0.017% or less than one-fifth of one percent. Decl. of Pikus at ¶ 15. More than 15 times as many Class members submitted claim forms—601 in total—than opted out of the settlement. *Id.* at ¶ 14. Most importantly, no members of the Class objected to the settlement.

The low opt-out rate and the absence of objections are highly relevant factors in the Court's evaluation of the settlement. Most courts consider both exclusions and objections as indicative of the reaction of the proposed class to the settlement. *See In re Synchrony Fin. Sec. Litig.*, No. 3:18-cv-1818-VAB, 2023 WL 4992933 (D. Conn. Aug. 4, 2023), citing 4 NEWBERG ON CLASS ACTIONS § 13:54 (5th ed.) ("One of the factors most courts consider is the reaction of the absent class members, specifically the quality and quantity of any objections and the quantity of class members who opt out."); *see also*

Page 6 -   PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement.").

In this case, the opt-out rate of the Class was extraordinarily low. Courts generally have found an opt-out rate of less than five percent as positive. *See e.g., Chun-Hoon*, 716 F. Supp at 852. An opt-out rate of less than one percent is viewed as a very low rate and favoring approval. *O'Connor v. Uber Techs., Inc.*, 2019 WL 4394401, at *6 (N.D. Cal. Sept. 13, 2019), *aff'd*, 2019 WL 7602362 (9th Cir. Dec. 20, 2019). Here, the opt-out rate of the Class was a fraction of one percent.

The complete lack of objection by the Class is especially favorable. Of the more than 20,000 members of the Class who received notice of the settlement, not one objected. Courts have found that the absence of any objection by the Class supports final approval and raises a strong presumption that the terms of the settlement are favorable to the absent members of the Class. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D.Cal.2004).

Finally, the high number of claims submitted—601 in total—further demonstrates a favorable reaction from the Class. The hundreds of timely claims submitted indicate that the notice was effective at educating Class members of the terms of the settlement, how they might participate in the settlement, and the deadline to

respond.³ The fact that so many individuals decided to participate by submitting claims rather than opting out or objecting to the settlement reinforces that the terms of the Settlement Agreement were overwhelmingly well-received by the Class.

The Class's response to the settlement notice is an important consideration in the Court's evaluation of the Parties' settlement. For all the reasons outlined above, the response of the Class supports a finding by the Court that the settlement is fair, reasonable, and adequate.

   **2. Plaintiffs' Requested Service Awards are Fair and Reasonable.**

The Court has discretion to approve a service award or incentive payment to class representatives. *Mego Fin'l Corp. Sec. Litig. v. Nadler*, 213 F.3d 454, 463 (9th Cir. 2000). Criteria used to consider the amount of a requested service award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atlantic Richfield Co.*, 901

---

³ One of the claim submissions was postmarked after the response deadline. Decl. of Pikus at ¶ 14. Consistent with the terms of the Settlement Agreement, counsel for the Parties conferred whether to allow the late claim submission and agreed that it should be treated as timely. The individual submitted both categories of claims, so they will receive $400 for their claims (in addition to $87.36 paid to each member of the Class) if the Court approves the settlement.

Page 8 -   PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
           APPROVAL OF CLASS ACTION SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

F. Supp. 294, 299 (N.D. Cal. 1995).

Each of the Plaintiffs submitted declarations with their renewed motion for preliminary approval explaining how they were affected by the litigation. ECF No. 56-60. The Court's responsive opinion and order found that service awards were appropriate in this case but declined to decide the final amount of the service awards, pointing out that the declarations did not provide information about the amount of time Plaintiffs spent on the litigation. ECF No. 63. To remedy this, each of the five named Plaintiffs have prepared declarations attached to this motion identifying specific activities related to this litigation and their best estimates of the amount of time they incurred on each activity. Decls. of Allen, Cruz, Trent, Urvina, and Woody.

Based on the specific time estimates in their declarations, the five Plaintiffs collectively spent over 300 hours—at least 307 hours to be precise—on activities in connection with the litigation. However, this hourly total is the low end of the range of Plaintiffs' estimated time spent. Further, some of the Plaintiffs were unable to recall all their time spent on the litigation. *See e.g.*, Decl. of Woody at ¶ 2 (noting memory limitations). The Plaintiffs' five declarations in support of this motion, together with Plaintiffs' earlier declarations, demonstrate that Plaintiffs' participation as class representatives had very significant impact on their lives, including extensive time spent on discrete litigation-related activities.

Consistent with the *Van Vranken* factors above, the requested service awards

compensate Plaintiffs not just for the sum hours spent performing litigation-related tasks but for all of the ways the time spent interfered with their lives. Plaintiffs demonstrated a commitment to participate as class representatives over the entire course of the litigation from late 2022 to the present, sometimes on short notice or at inconvenient times. For example, Plaintiff Trent attended her deposition at a time when she was weak from cancer treatment. Decl. Trent at ¶ 12. Plaintiff Cruz had to leave work early on multiple occasions to participate in litigation-related activities. Decl. Cruz at ¶ 9. And Plaintiff Urvina estimates that she missed several work shifts to be available for litigation related activities. Decl. Urvina at ¶ 9.

For the reasons previously outlined in Plaintiffs' renewed motion for preliminary approval, the service awards are further supported by the *Van Vranken* factors that consider factors other than time spent. The requested service award compensates Plaintiffs for carrying the emotional burden of the lawsuit through the pendency of the litigation, including significant stress for the Plaintiffs. Although the Court did not request further information on these other factors in the Order, the Court should consider the additional information provided by Plaintiffs about the myriad ways their service as class representatives created personal difficulty.

In consideration of the time expended on the lawsuit and the significant effect of the litigation on their lives, the requested service award of $9,500 per Plaintiff is fair and reasonable.

### 3. Class Counsel's Requested Attorney Fees are Fair and Reasonable.

In its Order granting preliminary approval of the settlement, the Court stated that it would evaluate whether the 25 percent benchmark should be based on the gross settlement amount or the amount of the benefit to the Class. The Court further stated that it would perform a lodestar analysis of class counsel's rates and hours to cross-check Plaintiffs' requested attorney fee award. As explained below, both analyses support the Court's award of Plaintiffs' requested attorney fees in the sum of $750,000.

### A. The 25 Percent Benchmark Should be Applied to the Gross Settlement Amount.

When courts in the Ninth Circuit award attorney fees as a percentage of monetary recovery, they look to the total settlement sum. *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953; *see also Fritsch v. Swift Transportation Co.*, 899 F.3d 785, 796 (9th Cir. 2008) ("[I]n common fund cases, we have estimated reasonable attorneys' fees to be 25 percent of the *total recovery*.") (emphasis added). Reasonable administration costs to provide notice and distribute funds to class members are considered a benefit to class members that should be included in the total recovery when applying the 25 percent benchmark. *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953. For this reason, courts in the Ninth Circuit commonly apply the 25 percent benchmark to the gross settlement sum. *See e.g., Davies v. PeaceHealth*, No. 6:21-CV-00825-AA, 2023 WL 7091968 (D. Or. Oct. 26, 2023) (awarding attorney fees of 25 percent of the gross settlement sum, including

amounts paid for settlement administration).

In settlements involving a benefit to the class that is difficult to ascertain or calculate, the 25 percent benchmark may not be an appropriate method of determining attorney fees. *See e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (questioning a percentage recovery for attorney fees when the value of the benefit to the class is uncertain). Here, however, the total recovery to the Class is strictly monetary and is therefore readily ascertainable. The gross settlement sum of $3 million is the total recovery to the Class. For this reason, cases involving non-monetary benefits to the class—such as the coupon offered to class members in *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014)—are inapposite.

Every indication in this case is that the cost of the settlement administration is reasonable. The declaration of the project manager for the Settlement Administrator demonstrates effective administration practices. *See* Decl. of Pikus. The total cost—$86,030—is comparable to similar cases. *See e.g., Davies, supra* (awarding costs and expenses of $65,000 to administer a class of approximately half the number of individuals—11,327—as compared to this case). The Court should not depart from the customary practice in the Ninth Circuit to include administration costs in the gross settlement sum when determining a percentage fee recovery.

///

///

### B. A Lodestar Cross-Check Supports Class Counsel's Requested Attorney Fees.

When class counsel seeks attorney fees as a percentage of a common fund, the Court may request a cross-check to compare the requested attorney fee sum with the equivalent sum under a lodestar analysis. The purpose of the cross-check is solely to assess reasonableness of the requested attorney fee, not to consider an alternative method for awarding attorney fees:

> Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). "Where a lodestar is merely being used as a crosscheck, the court 'may use a rough calculation of the lodestar.'" *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *5 (E.D. Cal. May 18, 2017), quoting *Bond v. Ferguson Enters., Inc.*, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011)).

Here, the lodestar cross-check shows hourly fees incurred in the approximate amount of $352,440.20. Decl. of Myers at ¶ 4. A multiplier of approximately 2.1 would

result in the lodestar total equaling the requested percentage fee award. This is well within normal ranges. *See Vizcaino*, 290 F.3d at 1051 n. 6 (noting that multipliers in the range of one to four are "frequently awarded in common fund cases when the lodestar method is applied"), quoting Krell v. Prudential Ins. Co., 148 F.3d 283, 341 (3rd Cir. 1998); *see also In re Portland Gen. Elec. Sec. Litig.*, No. 3:20-CV-1583-SI, 2022 WL 844077, at *9 (D. Or. Mar. 22, 2022) (finding a 2.7 multiplier reasonable).

However, the Court need not determine if a multiplier is necessary in this case because the cross-check is not intended to require the moving party to substantiate the requested fee award using a lodestar analysis. Rather, the lodestar analysis, as explained in *Vizacaino*, is intended merely as a tool to assess the reasonableness of the requested percentage attorney fee award. *See Vizcaino*, 290 F.3d at 1050. Here, the lodestar analysis tends to support that the requested percentage fee award would fall within a reasonable range.

The Court should further take into account the inherent risk, frontloading of costs, and delayed payment for services (if any) that necessarily attaches to contingent fee representation. The esteemed judge and legal scholar Richard Posner has described this in terms of a loan of professional services:

///

///

///

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is high because of the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans, and the total amount of interest is large not only because the interest rate is high but because the loan may be outstanding for many years, and with no periodic part payment, a device for reducing the risk of the ordinary lender.

RICHARD A. POSNER, ECONOMIC ANALYSIS OF LAW 624 (5th ed. 1998). Regardless of the strength of a case, there is always a risk of loss or low recovery in a contingent fee matter. Aside from the uncertainty of outcome, contingent fee representation results in significant loss of services and funds during the course of litigation. *See* Decl. of Myers at ¶¶ 2, 13.

The Court should find that the cross-check in this case supports an award of attorney fees consistent with the 25 percent benchmark for a common fund percentage recovery. Class counsel has obtained a significant benefit for the Class by achieving a gross settlement sum of $3 million. That total recovery should guide the Court's award of attorney fees absent good reason to depart from the benchmark.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court approve the settlement upon the terms agreed to by the Parties and enter an order as specified in this motion.

DATED: June 2, 2025.

BENNETT HARTMAN, LLP

s/Richard Myers
Richard B. Myers, OSB No. 131264
richard@bennetthartman.com
Direct: 503-546-9623
Kate D. Flanagan, OSB No. 213716
Direct: 503-546-9606
kate@bennetthartman.com
Of Attorneys for Plaintiffs

Page 16 - PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

BENNETT HARTMAN, LLP
210 SW Morrison Street, Suite 500
Portland, Oregon 97204
office: 503.227.4600 | fax: 503.248.6800

**CERTIFICATE OF SERVICE**

I hereby declare that I served the foregoing PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT on:

Ed Choi
ed.choi@millernash.com
April Upchurch Fredrickson
april.fredrickson@millernash.com
Matthew Tripp
matthew.tripp@millernash.com
Miller Nash LLP
111 SW Fifth Avenue, Suite 3400
Portland, Oregon 97204

Steven Wilker
steven.wolker@tonkon.com
Sasha Petrova
sasha.petrova@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204

on June 2, 2025, by the following method:

  X   via CM/ECF

DATED: June 2, 2025.

                   BENNETT HARTMAN, LLP

                   s/Richard Myers
                   Richard B. Myers, OSB No. 131264
                   richard@bennetthartman.com
                   Direct: 503-546-9623
                   Kate D. Flanagan, OSB No. 213716
                   Direct: 503-546-9606
                   kate@bennetthartman.com
                   Of Attorneys for Plaintiffs